IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAKEEM SULTAANA, | ) | Case No. 1:15-cv-382 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| JOHN JERMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I.      Procedural Background and Introduction**

Plaintiff, Hakeem Sultaana, an Ohio prisoner proceeding *pro se*, filed a 42 U.S.C. § 1983

complaint naming, in relevant part, Detectives John Jerman and Richard Williamson as

defendants.  ECF Doc. 1.  Specifically, Sultaana alleged that, while executing an arrest warrant

"at his home," Detectives Jerman and Williamson "without authority to search Plaintiff's

residence . . . illegally seized Plaintiff's Hakeem Sultaana U.S. Currency."  ECF Doc. 1 at 5.

Further, Sultaana alleged that the seized currency was neither logged when he was booked into

Cuyahoga County Jail nor later returned to him.  ECF Doc. 1 at 5-6.

This court initially dismissed the action for failure to state a claim upon which relief

could be granted under Fed. R. Civ. P. 12(b)(6).  ECF Doc. 7.  The Sixth Circuit reversed in part,

finding that Sultaana alleged sufficient facts to state a claim that Jerman and Williamson violated

his Fourth Amendment rights by illegally seizing his currency, but affirmed in part with respect

to all other claims and defendants.  ECF Doc. 23.  Since that time, an expeditious resolution of

this matter has remained elusive.  Deadlines have come and gone.  And, one week before the scheduled trial, the court granted defendants leave to file a motion for summary judgment based on qualified immunity.  ECF Doc. 282.  The court indicated that it would also consider Sultaana's previously-filed motion for summary judgment.[1]  ECF Doc. 363; *see also* ECF Doc. 199 (Sultaana's motion for summary judgment).  The parties' cross motions for summary judgment are now ripe for review.

Liberally construed, Sultaana's motion for summary judgment seeks an order conclusively finding as a matter of law that: (1) Detective Jerman and Deputy Williamson took Sultaana's currency from his home; (2) they did not have any probable cause or "apparent reason" for taking his currency; and that (3) a protective sweep did not justify their warrantless entry into his home.  ECF Doc. 199 at 10-20.  Defendants respond that: (1) to the extent Sultaana seeks to raise an independent illegal search claim, the claim is outside the scope of the Sixth Circuit's remand; (2) they lawfully entered Sultaana's home to conduct a protective sweep or to render emergency assistance after Sultaana went into diabetic shock; and that (3) the evidence in the record shows that they did not take any money from Sultaana's residence.  ECF Doc. 345 at 8, 12-13 & n.6; ECF Doc. 397 at 10-12.  Sultaana's reply brief reiterates the arguments laid out in his initial motion and asserts that the Sixth Circuit's remand order did not limit him only to the discrete claim that defendants illegally seized his currency.  ECF Doc. 386.

Defendants argue that they are entitled to summary judgment on Sultaana's illegal seizure claim because: (1) Sultaana has not produced sufficient evidence to prove that Detective Jerman and Deputy Williamson took any money, if it existed, from Sultaana's residence; and (2) if they

---

[1] Sultaana's previously-filed motion for summary judgment was initially stricken from the record because it was docketed after the court ordered that no motions for summary judgment would be accepted because the time for filing such motions had expired.  ECF Doc. 236 at 6-8.

took the money, they are entitled to qualified immunity.  ECF Doc. 345 at 5-13; *see also* ECF
Doc. 397 at 1-10.  Defendants' qualified immunity argument specifically alleges that, if they
took the money as alleged, then: (a) it was not clearly established that an officer's stealing
money during the execution of a search warrant violates the warrant-target's Fourth Amendment
rights, under *Jessop v. City of Fresno*, 936 F.3d 937, 942 (9th Cir. 2019); and (b) the officers
were legally present in the house, saw the money in plain view, and could reasonably believe that
the money was contraband that Sultaana intended to use to bribe witnesses or obstruct justice.
ECF Doc. 345 at 9-13; ECF Doc. 397 at 5-9.  Sultaana responds that this case is factually
distinguishable from *Jessop* because there was no *search* warrant and he was arrested outside,
before the defendants entered his home.  ECF Doc. 366 at 1-2.  Sultaana also argues that the
evidence shows that the defendants had no authority to enter his home, they took his currency,
and that he did not consent to Sikora providing him medical treatment or entering his home.
ECF Doc. 366 at 2-10.  Further, liberally construed, Sultaana asserts that the defendants are not
entitled to qualified immunity because no reasonable officer could have believed that authority to
enter his house existed or that the currency in his home was contraband.  ECF Doc. 366 at 6-11;
*see also* ECF Doc. 365 (adding additional case citations and commentary); ECF Doc. 389
(same); ECF Doc. 393 (same).  Sultaana has also challenges the defendants' reliance on
transcripts of phone conversations with Amirah Sultaana and his deposition transcripts, alleging
that those documents do not meet the standard for evidence under Rule 56(e).  ECF Doc. 349;
ECF Doc. 382 at 1; ECF Doc. 384 at 2.

Also pending before the court is Sultaana's response to this court's order to show cause
why he should not be declared a vexatious litigator.  ECF Doc. 402; *see also* ECF Doc. 388
(order to show cause).

II.    **Facts**

The following facts are undisputed or established by the Rule 56 evidence.

A.    **Case No. CR-13-571616 & Bond**

Setting the background for Sultaana's claims in this case is his criminal prosecution in Cuyahoga County Court of Common Pleas Case No. CR-13-571616.  On February 20, 2013, an Ohio grand jury indicted Sultaana on: (1) 1 count of engaging in corrupt activity (with a forfeiture provision) in violation of Ohio Rev. Code § 2923.32.A(3); (2) 1 count of grand theft in violation of Ohio Rev. Code § 2913.02.A(3); (3) 26 counts of securing records by deception in violation of Ohio Rev. Code § 2913.43.A; (4) 29 counts of tampering with records in violation of Ohio Rev. Code § 2913.42.A(1); (5) 27 counts of forgery, forging identification cards in violation of Ohio Rev. Code § 2913.31.A(3); (6) 17 counts of motor vehicle certificate of title offenses in violation of Ohio Rev. Code § 4505.19.A(4); and (7) 2 counts of possessing criminal tools in violation of Ohio Rev. Code § 2923.24.A.  ECF Doc. 345-6 at 1-5; Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-571616-A, Charges and Journal Entry on February 20, 2013.[2]  The state also indicted 17 other individuals in Case No. CR-13-571616, including Hilary Wood and Natasha Reyes.  ECF Doc. 345-6 at 1; *see also* Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-571616-J.

---

[2] Three of the securing records charges, one of the tampering with records charges, one of the forgery charges, and two of the motor vehicle certificate of title offense charges were nolled.  ECF Doc. 345-6 at 1-5; Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-571616-A, Charges Disposition.  On September 12, 2013, Sultaana was also indicted on four counts of tampering with records in violation of in violation of Ohio Rev. Code § 2913.42.A(1); two counts of forgery, forging identification cards in violation of Ohio Rev. Code § 2913.31.A(1); and two counts of grand theft (MV) in violation of Ohio Rev. Code § 2913.02.A(3).  Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-577414-A, Charges.  But those charges were dismissed without prejudice on May 9, 2014.  Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-577414-A, Journal Entry on May 9, 2014.

At Sultaana's arraignment, the state court set bond at $100,000 with the condition that he would be subject to court-supervised release.  ECF Doc. 199-1 at 2; Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-571616-A, Journal Entry on February 26, 2013.  On April 18, 2013, the state court additionally ordered that Sultaana was to have "no contact with victim[s] or [his] codefendants."  ECF Doc. 345-6 at 59; Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-571616-A, Journal Entry on April 18, 2013 (filed on April 23, 2013).[3]

## B.    Activities While on Bond

On March 3, 2014, Sultaana posted bond through his mother, Amirah Sultaana ("Amirah").  ECF Doc. 199-3 at 2-4; ECF Doc. 280-1 at 14; ECF Doc. 384-1 at 1; Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-571616-A, Journal Entry on March 3, 2014.  Pursuant to the bond, the sheriff's office released Sultaana on March 4, 2014.  ECF Doc. 220-1 at 1; ECF Doc. 384-1 at 1.  Sultaana's daughter, Brianna Hughley, had her girlfriend help her pick up Sultaana from jail, and Hughley's girlfriend dropped Hughley and Sultaana off at Hughley's home.  ECF Doc. 220-1 at 1; ECF Doc. 280-1 at 47-48.  After a few hours, Amirah picked up Sultaana and Hughley, and the three of them went shopping and then to Amirah and Sultaana's home at 16410 Scottsdale Boulevard in Shaker Heights, Ohio.  ECF Doc. 220-1 at 1; ECF Doc. 280-1 at 9-10, 48-49 (noting also that Sultaana's children did not live in that house).

---

[3] Sultaana's motion for summary judgment asserts that, on May 2, 2013, the state trial court modified the April 18, 2013, order to "allow[] Sultaana to contact co-defendants via co-defendant's [sic] attorney of records [sic]."  ECF Doc. 199 at 3.  To explain why such an order does not appear in the state court record, Sultaana speculates that the order must have been deleted and cites a notation that a court reporter fee was entered on the docket on May 3, 2013, as support for his theory.  *See* ECF Doc. 199 at 3 (citing ECF Doc. 199-2 at 3 (docket for Case No. CR-13-571616-A, entry on May 3, 2013 ("court reporter fee")).  But Sultaana's speculation here is not an adequate substitute for evidence under Rule 56.  *See Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1134 (6th Cir. 1986) ("It is evidence that must be produced, [] not merely a theoretical argument suggesting the logical possibility of the existence of facts pointing to a different conclusion."); *see also Tomas v. Nationwide Mut. Ins. Co.*, 79 Ohio App.3d 624, 633 (Ohio App. Ct. 1992) ("Speculation based upon possibility is too tender a reed upon which to base a claim for relief.").

During the time that Sultaana spent with Amirah and Hughley, they learned that Sultaana had some amount of cash.  ECF Doc. 220-1 at 1-2; ECF Doc. 280-1 at 45-47; ECF Doc. 384-1 at 3.  Sultaana said he had "a few grand."  ECF Doc. 280-1 at 59.  When asked about the provenance of his cash, Sultaana testified as follows:

> SULTAANA:  I had money at my home, bonded – made $100,000 bond.
>
> DEFENSE COUNSEL:  So your testimony is you already had a few thousand dollars at your mom's house, correct?
>
> SULTAANA:  Yeah.  I had money, correct.
>
> DEFENSE COUNSEL:  And that was from your job as a car salesman?
>
> SULTAANA:  No, I didn't say that.
>
> DEFENSE COUNSEL:  Where did it come from?
>
> SULTAANA:  I had a – the case I'm on right now, I'm here for – what do you call it?  They say that I got loans from these loan companies for the cars.  The case I'm in here, they allege I stole tons of money from – I think $80,000, $40,000, I'm not sure.

ECF Doc. 280-1 at 59.

In the early morning of March 5, 2014, Sultaana used his cash to play blackjack at the Horseshoe Casino.  ECF Doc. 220-1 ("2:45 A.M."); ECF Doc. 280-1 at 19-21, 50-55.  Sultaana testified that he won over $7,000 at the casino, but the casino did not have any records of him cashing out because he only cashed out $1,400 at a time and was not required to show his ID.  ECF Doc. 280-1 at 52-53.  Sultaana also never filed a tax return declaring his winnings.  ECF Doc. 280-1 at 54-55.  When Sultaana returned home, Hughley and Amirah saw that he had a "large amount" of cash.  ECF Doc. 384-1 at 3; ECF Doc. 220-1 at 2 (estimating the amount was "nearly over $10,000"); ECF Doc. 280-1 at 50.  Around 7:00 PM on March 5, 2014, Sultaana

and Amirah picked up Natasha Reyes and dropped Hughley off at her home.  ECF Doc. 220-1 at 2.

Hughley saw Sultaana again the morning of March 6, 2014, after he went to buy a cell phone and picked up lunch with Amber Lantz (Hughley's mother).  ECF Doc. 220-1 at 2; ECF Doc. 280-1 at 52.  At some point after Sultaana returned to his and Amirah's house, Amirah went shopping.  ECF Doc. 301-1 at 1; *see also* ECF Doc. 280-1 at 46.

### C.    Arrest Warrant Upon Affidavit

On March 6, 2014, Detective Jerman appeared before the state trial court and testified that he believed Sultaana had violated the court's April 18, 2013, order prohibiting Sultaana's direct contact with codefendants.  ECF Doc. 1-1 at 2-3; ECF Doc. 345-1 at 4.  Jerman said that he learned from Ohio Bureau of Motor Vehicles Investigator Michael Russo that: (1) Sultaana was indicted on several charges including theft, tampering with records, forgery, and securing writings by deception; (2) Sultaana's codefendants included Hilary Wood and Natasha Reyes; and (3) the court had ordered Sultaana not to directly contact his codefendants, but to only contact them through their attorneys.  ECF Doc. 1-1 at 2-3; ECF Doc. 345-1 at 4-5.

Detective Jerman testified that Investigator Russo had informed him that Sultaana contacted individuals associated with his codefendant Wood after he was released on bond.  ECF Doc. 1-1 at 3; ECF Doc. 345-1 at 5.  Sultaana had first contacted a friend of Wood's daughter to Wood's daughter's contact information.  ECF Doc. 1-1 at 3; ECF Doc. 345-1 at 5.  He then contacted Wood's daughter to ask for Wood's contact information and directed the daughter to tell Wood to call him.  ECF Doc. 1-1 at 3; ECF Doc. 345-1 at 5.  On March 5, 2014, Wood informed the Cuyahoga County Prosecutor's Office that Sultaana had attempted to contact her through her daughter.  ECF Doc. 1-1 at 4; ECF Doc. 345-1 at 6.

Detective Jerman testified that, on March 6, 2014, Wood's daughter placed a controlled call to Sultaana.  ECF Doc. 1-1 at 4; ECF Doc. 345-1 at 6.  Deputy Williamson and Investigator Russo monitored the call.  ECF Doc. 1-1 at 4; ECF Doc. 345-1 at 6.  Sultaana told Wood's daughter that he wanted to speak with Wood and agreed to give Wood's daughter money.  ECF Doc. 1-1 at 4; ECF Doc. 345-1 at 6.  Minutes after Wood's daughter ended the call, Sultaana called her back to ensure that Wood would actually contact him and mentioned that he would also try to contact "Tasha" (referring to Natasha Reyes).  ECF Doc. 1-1 at 4; ECF Doc. 345-1 at 6.  Wood called Sultaana, and Sultaana asked Wood to set up a meeting.  ECF Doc. 1-1 at 5; ECF Doc. 345-1 at 7.  Sultaana also told Wood that "Tasha" was with him.  ECF Doc. 1-1 at 7; ECF Doc. 345-1 at 7; *see also* ECF Doc. 280-1 at 52 (Sultaana testifying that he picked up Natasha on the morning of March 6, 2014).

Based upon Detective Jerman's affidavit testimony, the state court issued an arrest warrant, stating:

> To:    CUYAHOGA COUNTY SHERIFF FRANK BOVA AND/OR DETECTIVE JOHN JERMAN #321 AND/R DETECTIVE RICHARD WILLIAMSON #274 AND/OR A MEMBER OF SAID DEPARTMENT AND/OR ANY LAW ENFORCEMENT OFFICER AS AUTHORIZED
>
> Whereas there has been filed with me an affidavit, a copy of which is attached hereto, designated as Exhibit A, and incorporated herein as though fully re-written, wherein the affiant avers that he believes and has good cause to believe that Hakeem Sultaana, last known address 16410 Scottsdale, Shaker Heights, Ohio, 44120, has violated this Court's order of April 18, 2013, prohibiting contact with codefendants in CR571616, currently pending before this Court.  You are ordered to arrest Hakeem Sultaana and bring him before this court without unnecessary delay.
>
> I am satisfied that there is probable cause to believe that Hakeem Sultaana has contacted a co-defendant in CR571616 in violation of this Court's order of April 18, 2013.

ECF Doc. 1-2 at 1; ECF Doc. 199-4 at 2; ECF Doc. 345-1 at 3.

8

### D.    Sultaana's Arrest

On the evening of March 6, 2014, Detective Jerman and Deputy Williamson, with assistance from Sergeant Eugene Sharpe, Detective Matthew Massey, Detective William Uthe, Deputy Jeff Sikora, and K-9 Deputy Nicholas Riegelmayer (the "CCSO Warrant Unit"), went to arrest Sultaana pursuant to the warrant issued earlier the same day.  ECF Doc. at 199-5 at 2; ECF Doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  The CCSO Warrant Unit initially went to a restaurant at West 130th Street and Brook Park Road because they had information Sultaana would be there, but when Sultaana did not appear after approximately 45 minutes they proceeded to Sultaana's residence.  ECF Doc. 199-5 at 2.

Sometime between 7:00 PM and approximately 7:30 PM, the CCSO Warrant Unit arrived at and surrounded Sultaana's house.  ECF Doc. 199-5 at 2; ECF Doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-5 at 7; ECF Doc. 402-7; ECF Doc. 402-8 at 1.  After the officers initially knocked on Sultaana's door, he did not answer for approximately 5 to 10 minutes because he "didn't know who was" at his door.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 23; ECF Doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-5 at 7.  But the officers understood the building was occupied because Detective Jerman and Sergeant Sharpe heard noises and saw a pair of shoes under the door.  ECF Doc. 199-5 at 2; ECF Doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  When the officers threatened to forcibly enter the house, Sultaana opened the door.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 23-24; ECF Doc. 345-3 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  Within seconds of opening the door, Sultaana was put into handcuffs on the front porch of the house.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 24;

ECF Doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.

Shortly after he was placed in handcuffs, Sultaana had a diabetic attack and informed the officers about it.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 24; ECF doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  The diabetic attack made Sultaana feel "loopy," but he did not pass out.  ECF Doc. 280-1 at 25.  Because it was cold and poorly lit outside, the officers returned Sultaana into the house so that Deputy Sikora – an EMT – could better provide emergency medical assistance for Sultaana.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 27; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  The officers also called for EMS to come to the scene.  ECF Doc. 199-5 at 2; ECF Doc. 199-6 at 2, 5; ECF Doc. 280-1 at 25; ECF Doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  The officers did not conduct a protective sweep of the house during that time, but "someone" pointed out that there was money on the table in the living room (the room immediately inside Sultaana's front door).  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 15; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  Sometime before EMS arrived, Amirah arrived at the house; however, officers would not allow her to enter the house or ride in the ambulance with Sultaana.  ECF Doc. 191 at 1-4; ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 46; ECF Doc. 345-5 at 7; ECF Doc. 384-1 at 3-4.

At this point, the parties' stories diverge.  Sultaana testified that he saw the "lead arrest officer who [later] accompanied [him] in the ambulance" take the cash – $8,900 – that was in his house.  ECF Doc. 280-1 at 18-19, 33.  Sultaana could not recall any particular details about the officer who took his money, but stated that he was white, about 5'11", and had a "medium,

skinny maybe" build.  ECF Doc. 280-1 at 17-19, 29-31.  Sultaana said that he learned the individual was Detective Jerman though discovery in this case and he recognized him from the ambulance.  ECF Doc. 280-1 at 18, 33, 36.  Sultaana said that the other officers also handled the money and debated what to do with it.  ECF Doc. 280-1 at 19, 32-34.

Detective Jerman, Deputy Williamson, Detective Massey, and Deputy Sikora all attested that they did not take any currency from Sultaana's house, and that they did not see any other officer take currency from Sultaana's house.  ECF Doc. 345-1 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; *see also* ECF Doc. 357-1 at 1, 4 (Deputy Williamson's deposition testimony that he did not take any cash from Sultaana's house).  In his report, Detective Massey noted that the cash in Sultaana's house was not inventoried because Sultaana's mother – Amirah – had arrived on scene.  ECF Doc. 199-5 at 2; *see also* ECF Doc. 345-5 at 7.

Detective Jerman and Detective Massey accompanied Sultaana in the ambulance.  ECF Doc. 199-5 at 2.  After Sultaana was treated and released from the hospital, Detective Jerman and Deputy Williamson transported him to the Cuyahoga County Jail.  ECF Doc. 199-5 at 2.  No property was inventoried when Sultaana was booked.  ECF Doc. 199-7 at 2.  After booking, Sultaana phoned Amirah to inform her that his money was not booked in with him, and that the officers took $8,900 in cash from his house.  ECF Doc. 280-1 at 45; ECF Doc. 384-1 at 4; ECF Doc. 402-7 at 1; ECF Doc. 402-8 at 1.

## III.  Applicable Legal Standards

### A.    Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018).  The moving party must

11

demonstrate "the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted). The nonmoving party may not simply rely on her pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted); *see also Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996) (The court does not have the responsibility to search the record *sua sponte* for genuine issues of fact). A reviewing court must determine whether the evidence that the nonmoving party relies upon "presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In evaluating the evidence presented on a summary judgment motion, courts must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255. Nonetheless, a court need not accept unsupported or conclusory statements as true. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

### B.   Liberal Construction for Pro Se Filings

Filings by *pro se* litigants are liberally construed and held to less stringent standards than formal filings by lawyers. *El Bey v. Roop*, 500 F.3d 407, 413 (6th Cir. 2008). Nevertheless, the court may not use liberal construction to create arguments on behalf of a litigant that are plainly not present in the litigant's briefing. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that holding otherwise would "transform the district court . . . to the improper

role of an advocate seeking out the strongest arguments and most successful strategies for a party").

## IV. Evidentiary Challenges

As a preliminary matter, Sultaana has raised two particularized challenges to the evidence defendants have submitted in support of their motion for summary judgment. *See* ECF Doc. 349; ECF Doc. 384. Specifically, Sultaana challenges the defendants' use of: (1) unauthenticated transcripts of phone conversations between Amirah Sultaana and Detective Schilling (ECF Doc. 345-5 at 10-15); and (2) the unsigned transcript of Sultaana's October 25, 2019, deposition (ECF Doc. 280-1). ECF Doc. 349; ECF Doc. 384. Because reference to Detective Schilling's transcripts of conversations with Amirah Sultaana is not necessary for resolution of the parties' motions for summary judgment and this order makes no reference to those transcripts, Sultaana's challenge to that evidence is moot. *See generally* Section II.*, supra*.

The fact that Sultaana did not sign his deposition does not render it inadmissible as support for a motion under Rule 56 because Sultaana's deposition testimony was taken under oath, made on Sultaana's personal knowledge, and shows that Sultaana was competent to testify. *See generally* ECF Doc. 280-1; Fed. R. Civ. P. 56(c)(4); *Jones v. City of Franklin*, No. 3:08-cv-1134, 2010 U.S. Dist. LEXIS 60344, at *10-11 (M.D. Tenn., Jun. 18, 2010) ("The use of a deposition in summary judgment proceedings need only satisfy the admissibility requirements for affidavits, namely, that they are: (1) taken under oath; and (2) based on personal knowledge."). Further, noting in Rule 30 or 32 requires that a deponent sign the deposition transcript before it may be admitted as evidence; the deposition transcript contains all the information recitals and recording officer certifications required under Rule 30(b)(5)(A), (b)(5)(C), and (f)(1); and Sultaana has had ample time to respond to the deposition transcript and

13

submit errors or corrections to the deposition transcript under Rule 30(e), but has not done so. *See* ECF Doc. 280-1 at 1-4, 61-62 (information recitals, notation that Sultaana was "first duly sworn," and recording officer certifications); ECF Doc. 280-1 at 64 (errata sheet); Fed. R. Civ. P. 30(b)(5)(A), (b)(5)(C), (e), (f)(1); *cf. Seay v. TVA*, 339 F.3d 454, 480-82 (6th Cir. 2003) (indicating that a district court need only provide a party the opportunity to respond to evidence submitted in support of a motion for summary judgment).  Accordingly, Sultaana's deposition transcript is admissible for Rule 56 purposes even though Sultaana has not signed it.

## V.      Motions for Summary Judgment

### A.      Taking of Sultaana's Currency

The first issue raised in both Sultaana's and the defendants' motions for summary judgment asks the court to find that there is no genuine issue of material fact as to whether Detective Jerman and Deputy Williamson took Sultaana's currency.  Liberally construed, Sultaana argues that his testimony, along with the inferences that can be drawn from Amirah's and Hughley's testimony, conclusively establish that Detective Jerman and Deputy Williamson took his currency.  ECF Doc. 199 at 7, 18, 20.  The defendants, on the other hand, contend that their testimony and testimony from the other responding officers establish with equal certainty that Detective Jerman and Deputy Williamson did not take the currency.  ECF Doc. 345 at 7-8.

Sultaana is not entitled to summary judgment on this issue because he has not shown that there is no genuine issue of material fact as to whether the defendants took his currency.  Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258.  In response to Sultaana's motion for summary judgment, the defendants have pointed to evidence from which a reasonable jury could conclude that Detective Jerman and Deputy Williamson did not take his currency.  *Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250-52.  Such evidence includes deposition testimony from Deputy

Williamson and declarations from Detective Jerman, Deputy Williamson, Detective Massey, and Deputy Sikora.  ECF Doc. 345-1; ECF Doc. 345-2; ECF Doc. 345-3; ECF Doc. 345-2; ECF Doc. 357-1; *see also* ECF Doc. 345-5 at 7.  Thus, Sultaana has failed to show that there is no genuine issue of material fact as to whether Detective Jerman and Detective Williamson took his currency, and that he is entitled to judgment as a matter of law.

The defendants are entitled to summary judgment on the issue of whether Deputy Williamson took Sultaana's currency, but they are not entitled to summary judgment on the issue of whether Detective Jerman took Sultaana's currency.  Here, Sultaana's deposition testimony – identifying Detective Jerman as the officer who took his currency – is the only evidence that identifies *who* took Sultaana's currency.[4]  ECF Doc. 280-1 at 17-19, 29-34, 36.  On the other hand, while Sultaana said that the other officers discussed what to do with the money and handled it after Jerman took it, Sultaana's testimony does not specifically identify any other officer as having taken his money.  ECF Doc. 280-1 at 19, 32-34.  Neither Hughley nor Amirah declaration testimony could identify a specific officer because they were not present when the alleged seizure occurred.  *See* ECF Doc. 191 at 1-4; ECF Doc. 199-5 at 2; ECF Doc. 220-1 at 1-2; ECF Doc. 280-1 at 46; ECF Doc. 345-5 at 7; ECF Doc. 384-1 at 3-4.  Thus, construing the evidence in Sultaana's favor, there is insufficient evidence for a jury to conclude that Deputy

---

[4] Defendants urge the court to reject Sultaana's testimony as self-contradicting and creating a "visible fiction."  ECF Doc. 345 at 6-8; *see also United States v. Hughes*, 606 F.3d 311, 319 (6th Cir. 2010) ("[C]ourts should not accept 'visible fiction' that is 'so utterly discredited by the record that no reasonable jury could have believed it.'" (quoting *Scott v. Harris*, 550 U.S. 372, 379-81 (2007))).  While it is true that Sultaana's testimony conflicts with other evidence regarding *how much* currency was allegedly taken from his house, *compare* ECF Doc. 280-1 at 18-19, 33 ($8,900), *with* ECF Doc. 220-1 at 2 ($10,000), Sultaana has consistently testified that an officer took currency from his house and identified that officer as Detective Jerman.  *See* ECF Doc. 280-1 at 17-19, 29-34, 36.  Thus, the court will not break from the general rule that it "do[es] not weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute."  *Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672, 679 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 249).

Williamson took Sultaana's currency; however, a jury could reasonably conclude that Detective Jerman did. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258; *Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250-52; *see also Jones v. City of Elyria*, 947 F.3d 905, 910 (6th Cir. 2020) ("Our cases . . . require that each officer be assessed on [his] own terms."). Simply put, this is a variation on the theme "he said – she said," and a jury must resolve the dispute.

Accordingly, I recommend that Sultaana's motion for summary judgment on the issue of whether Detective Jerman and Deputy Williamson took his currency be denied. I further recommend the defendants' motion for summary on the issue of whether the defendants took his currency be denied in part with regard Detective Jerman and granted in part with regard to Deputy Williamson. And, because the failure to produce evidence that Deputy Williamson took Sultaana's currency undermines his sole claim against Williamson in this case, I recommend that Deputy Williamson be dismissed as a party. *See* ECF Doc. 24 at 5 ("[T]he district court's judgment is VACATED to the extent it dismissed Sultaana's claim challenging Jerman and Williamson's seizure of United States currency from his home. The district court's dismissal of Sultaana's remaining claims is AFFIRMED.").

### B.     Fourth Amendment Seizure & Qualified Immunity

The defendants next argue that – even assuming for the sake of argument that they took Sultaana's currency – they are entitled to summary judgment on the basis of qualified immunity because: (1) they were lawfully permitted to seize Sultaana's currency under the plain view exception to the warrant requirement; and (2) it was not clearly established that their conduct violated Sultaana's Fourth Amendment rights. ECF Doc. 345 at 9-14; ECF Doc. 397 at 2, 5-9. Specifically, the defendants assert that the plain view exception applies because Sultaana's currency was immediately identifiable as possible contraband related to his underlying criminal

16

activities and payments to codefendants.  ECF Doc. 345 at 9-14; ECF Doc. 397 at 6-9.  The defendants also assert that they were lawfully present in Sultaana's home to: (1) execute a search warrant; (2) provide emergency medical aid; and (3) protect Deputy Sikora and prevent Sultaana from fleeing while Sikora provided medical aid.  ECF Doc. 345 at 9-14; ECF Doc. 397 at 6-9. Finally, the defendants point to the Ninth Circuit's decision in *Jessop v. City of Fresno*, 936 F.3d 937, 942 (9th Cir. 2019), and Sixth Circuit's decision in *Fox v. Oosterum*, 176 F.3d 342 (6th Cir. 1999), for the proposition that it was not clearly established that officers stealing items from suspects violates the Fourth Amendment.  ECF Doc. 345 at 9-11; ECF Doc. 397 at 5-7.

Sultaana opposes the defendant's qualified immunity argument and, liberally construed, seeks partial summary judgment determining that: (1) the defendants had "no apparent reason" to seize the currency; and (2) a protective sweep did not justify the defendants' and other officers' warrantless entry into his home.[5]  *See* ECF Doc. 199 at 10-21; *see also* ECF Doc. 365 at 5; ECF Doc. 366; ECF Doc. 384; ECF Doc. 386.  Further in opposition to the defendants' qualified immunity argument, Sultaana asserts that *Jessop* and *Fox* are factually distinguishable from this case, and that his right against unreasonable searches and seizures was clearly established.  ECF Doc. 366 at 1-16; *see also* ECF Doc. 365 at 5; ECF Doc. 384; ECF Doc. 386.

Officers are qualifiedly immune from § 1983 litigation and liability arising from actions within their discretionary functions, so long as their conduct did not violate the plaintiff's clearly established statutory or constitutional rights.  *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009).

---

[5] To the extent Sultaana seeks summary judgment on a freestanding claim that defendants unlawfully entered and searched his home, the court notes that the Sixth Circuit remanded only Sultaana's unlawful seizure claim and there is no unlawful entry/search claim currently before this court.  *See* ECF Doc. 24 at 5 ("[T]he district court's judgment is VACATED to the extent it dismissed Sultaana's claim challenging Jerman and Williamson's seizure of United States currency from his home.  The district court's dismissal of Sultaana's remaining claims is AFFIRMED."); *see also Cont'l Cas. Co. v. Indian Head Indus.*, 941 F.3d 828, 834 (6th Cir. 2019 ("The court cannot go beyond the scope of the remand.").

"In determining whether qualified immunity applies, [the court] employ[s] a two-part test, asking (1) whether, considering the allegations in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

### 1. Constitutional Violation[6]

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and forbids most warrantless intrusions against "persons, houses, papers, and effects." U.S. CONST., Amend. IV; *see also Katz v. United States*, 389 U.S. 347, 357 (1967) (warrantless searches are "*per se* unreasonable under the Fourth Amendment"). There are, however, "a few carefully delineated" exceptions to the warrant requirement. *Katz*, 389 U.S. at 357; *United States v. Radka*, 904 F.2d 357, 360 (6th Cir. 1990). Under the plain view exception, officers do not need a warrant to seize an item if: (1) it is in plain view of the officer; (2) the item immediately appears to be evidence or contraband; (3) the officer is legally present in the area from which he views the object; and (4) the officer has a lawful right to access the object itself. *United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), and *Horton v. California*, 496 U.S. 128, 137 (1990)).

An arrest warrant authorizes entry into a home only when the officers executing the warrant have reasonable or probable cause to believe the person named in the warrant is within the home. *Payton v. New York*, 445 U.S. 573, 603 (1980) ("An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). However, once the arrest is

---

[6] Because both of the remaining issues in Sultaana's motion for summary judgment are subsumed within the question of whether the officers violated his Fourth Amendment rights when they allegedly seized his currency, I will address those issues in the same analysis in which I address the defendants' argument that the alleged seizure did not violate his Fourth Amendment rights.

effectuated and the suspect removed from the home, the officers' job is finished, and they no longer have a right to enter or remain on the property. *United States v. Damrah*, 322 F. Supp. 2d 892, 898 (N.D. Ohio, June 7, 2004) (noting that *Maryland v. Buie*, 494 U.S. 325 (1990), announced the only exception to this rule and permits officers to remain to conduct a protective sweep only as long as "necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises").

Exigent circumstances may also justify a warrantless entry. *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (noting that the Supreme Court has recognized four exigent circumstances: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; and (4) risk of danger to police or others). Police officers' need to respond to a medical emergency is an exigent circumstance that justifies a warrantless entry when police officers "reasonably believe that a person *within* is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978) (emphasis added). Even when exigent circumstances justify a warrantless entry, the entry must be "'strictly circumscribed by the exigencies which justify its initiation.'" *Mincey*, 437 U.S. at 393 (quoting *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968)); *see also United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (when exigent circumstances justified entering home to free a victim who was held against her will, exigent circumstances did not also justify officers' seizure of firearms from a closet within home because the officers had time to secure the premises and obtain a search warrant). Further, "an officer cannot manipulate a situation as to create [an] exigency." *United States v. Atchley*, 474 F.3d 840, 850-51 (6th Cir. 2007). The government's burden to show the existence of exigent circumstances necessary to overcome the presumption of unreasonableness from a warrantless

entry is high. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *United States v. Radka*, 904 F.2d at 361.

### a.  Plain View

It is undisputed that Sultaana's cash was in the officers' plain view after they entered his living room. *McLevain*, 310 F.3d at 439; *Horton*, 496 U.S. at 137. The officers and Sultaana testified that, once the officers brought him back into his house, they could see the cash sitting on the dining room table. ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 15; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.

### b.  Incriminating Nature

The evidence in the record, whether construed in Sultaana's or the defendants' favor, indicates that the incriminating nature of Sultaana's currency was immediately apparent to the officers. *McLevain*, 310 F.3d at 439; *Horton*, 496 U.S. at 137. For the incriminating nature of an item to be immediately apparent, an officer must have "probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980).

It is undisputed that, at the time of Sultaana's arrest, he was under indictment for theft and fraud offenses involving of tens of thousands of dollars. ECF Doc. 280-1 at 59; ECF Doc. 345-6 at 1-5; Cuy. Cty. Ct. Comm. Pls. Case No. CR-13-571616-A, Charges and Journal Entry on Feb. 20, 2013. There is also evidence in the record showing that officers had reason to believe Sultaana was trying to pay co-defendants or other people related to underlying criminal case. ECF Doc. 1-1 at 4; ECF Doc. 345-1 at 6. Sultaana has not pointed to any evidence that would conflict with these facts. *See generally* ECF Doc. 199; ECF Doc. 349; ECF Doc. 365; ECF Doc. 366; ECF Doc. 382; ECF Doc. 384; ECF Doc. 386. These circumstances could reasonably give officers probable cause to believe that the large sum of currency in Sultaana's

living room was evidence or contraband.  *See United States v. Chandler*, 437 F. App'x 420, 428 (6th Cir. 2011) (collecting cases holding that the incriminating nature of large sums of cash is "immediately apparent" based on the circumstances of the underlying crimes).  Moreover, even assuming Sultaana informed the police that he got the money from the casino, Sultaana's statements would not have overcome the officers' probable cause to believe that the cash was evidence or contraband associated with his underlying criminal activities.  *Cf. Valley Broadcasting Co. v. United States*, 107 F.3d 1328, 1332 (9th Cir. 1997) (noting that laundering criminal proceeds by gambling in casinos is a common scheme); ECF Doc. 280-1 at 52-53, 59.

Because the officers had probable cause to believe the cash in Sultaana's living room was evidence or contraband related to his underlying offenses or attempts to pay his codefendants, I recommend that Sultaana's motion for partial summary judgment on this issue be denied.

### c.      Legal Presence

The main thrust of the parties' arguments concerns whether the officers were legally present in Sultaana's home.  As discussed above, the officers assert three theories for legal presence in Sultaana's home: (1) the arrest warrant; (2) medical aid; and (3) protecting Deputy Sikora and preventing Sultaana's escape while medical aid was provided.  ECF Doc. 345 at 9-14; ECF Doc. 397 at 6-9.  Sultaana, on the other hand, seeks partial summary judgment determining that a protective sweep did not justify their presence in his home.

#### i.      *Arrest Warrant*

The problem with the officers first theory of legal presence is that Sultaana's arrest was completed when he stepped on to the porch, submitted to the officers, and was placed in handcuffs *outside his home*.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 23-24; ECF Doc. 345-3 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7;

*Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir. 1985) ("The seizure was complete when [the suspect] submitted to arrest."). At that point, the arrest warrant no longer justified an entry into Sultaana's home. *Damrah*, 322 F. Supp. 2d at 898. Thus, the defendants have not met their burden to establish that they were legally present inside Sultaana's home based on the arrest warrant.

*ii.     Protective Sweep*

When serving an arrest warrant, officers may extend their presence momentarily after the suspect submits to arrest to conduct a protective sweep if they had a reasonable suspicion of danger. *Damrah*, 322 F. Supp. 2d at 898; *Buie*, 494 U.S. at 333-36. Sultaana is correct that the evidence in the record indicates that the officers did not subjectively believe that they had the reasonable suspicion necessary to conduct a protective sweep. *See* ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 15; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7. Nevertheless, the relevant question is not what the officers subjectively believed; rather, the court must ask what a *reasonable officer* could have believed based on the circumstances. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Here, if the evidence is construed in Sultaana's favor (on the defendants' motion for summary judgment), the officers' decision not to conduct a protective sweep and the lack of any testimony that officers believed someone else was inside the house would indicate that a reasonable officer would not have believed that reasonable suspicion supported a protective sweep. *See* ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 15; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7. Thus, the defendants cannot show that they were legally present in Sultaana's home to conduct a protective sweep. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258; *Anderson*, 477 U.S. at 251-52.

22

On the other hand, if the evidence is construed in the defendants' favor (on Sultaana's motion for summary judgment), a reasonable officer could have reasonable suspicion of danger supporting a protective sweep. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258; *Anderson*, 477 U.S. at 251-52. Such suspicion could be based on the undisputed facts that Sultaana was not the only person who resided at his home, Sultaana was spending his time out on bond with several other people including one of his codefendants, the officers were serving his arrest warrant at night, and Sultaana delayed several minutes before answering the door. ECF Doc. 1-1 at 3-7; ECF Doc. 199-3 at 2-4; ECF Doc. 199-5 at 2; ECF Doc. 220-1 at 1-2; ECF Doc. 280-1 at 9-10, 14, 23, 45-49, 52, 59; ECF Doc. 345-1 at 5-7; ECF Doc. 345-2 at 1; ECF Doc. 345-5 at 7; ECF Doc. 384-1 at 1, 3; ECF Doc. 402-7; ECF Doc. 402-8. Therefore, Sultaana has not carried his burden to show that a protective sweep could not have justified the defendants' and other officers' entry into his home. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258; *Anderson*, 477 U.S. at 251-52.

### iii. Medical Emergency

The officers' next theory of lawful presence – a medical emergency – is also unavailing. As a preliminary matter, it is important to note that the defendants did not clearly raise their theory that a medical emergency justified their entry into Sultaana's house until they filed their reply memorandum. *Compare* ECF Doc. 345, *with* ECF Doc. 397. Thus, any such argument is waived. *See Glidden Co. v. Kinsella*, 386 F. App'x 535, 544 n.2 (6th Cir. 2010) ("In *Murr v. United States* . . . the [Sixth Circuit] indicated that a party's failure to raise an argument before the magistrate judge constitutes a waiver. 200 F.3d 895, 902 n.1 (6th Cir. 2000)."); *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 676 (6th Cir. 2009) (noting that an argument cannot be raised for the first time in a reply brief).

23

Even if the argument that a medical emergency justified the officers' entry was not waived, Detective Jerman cannot meet his high burden to show that a medical emergency required the officers to enter Sultaana's house.  *Johnson*, 22 F.3d at 680; *Mincey*, 437 U.S. at 393; *Welsh*, 466 U.S. at 750; *Radka*, 904 F.2d at 361.  Here, the record evidence shows that Sultaana was *outside* his house and in the officers' custody when he claimed to go diabetic shock.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 23-24; ECF Doc. 345-3 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7.  Thus, Detective Jerman cannot show that the officers "reasonably believe[d] that a person *within* [was] in need of immediate aid."  *Mincey*, 437 U.S. at 393.  Further, the officers have not pointed to any authority indicating that "chilly" weather and poor lighting creates an exigency that requires officers to take a person who is in custody outside into his home in order to provide treatment for diabetic shock – especially when EMS was only six minutes away.  *See* ECF Doc. 345-4 at 1 (noting that they moved Sultaana inside because it was "chilly" and poorly lit outside); ECF Doc. 345-5 at 7 (EMS was called at 7:41 PM and arrived at 7:47 PM); ECF Doc. 199-6 at 5 (same).  Thus, the officers cannot meet their high burden to establish that a medical emergency necessitated a warrantless entry into Sultaana's home.  *Johnson*, 22 F.3d at 680; *Mincey*, 437 U.S. at 393; *Welsh*, 466 U.S. at 750; *Radka*, 904 F.2d at 361.

                  *iv.     Protecting Deputy Sikora and Preventing Escape*

The defendants' final rationale – that they were permitted to enter to protect Deputy Sikora and prevent Sultaana from fleeing – also fails.  Here, the officers' own conduct (relocating Sultaana into his house) manufactured the perceived risk to Deputy Sikora or risk that Sultaana would flee after being relocated into his house.  ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 23-24; ECF Doc. 345-3 at 1; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1;

ECF Doc. 345-5 at 7. And officers cannot rely on an exigency they created to get around the warrant requirement. *Atchley*, 474 F.3d at 850-51.

Because the officers have not met their burden to show that there is no genuine dispute of material fact as to whether they were legally present in Sultaana's home, they cannot show that the alleged seizure of Sultaana's currency did not violate his constitutional rights. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258; *Anderson*, 477 U.S. at 251-52; *McLevain*, 310 F.3d at 439; *Horton*, 496 U.S. at 137. Further, because Sultaana has not met his burden to show that no reasonable officer could have had reasonable suspicion of danger justifying a protective sweep of his house, Sultaana's motion for partial summary judgment on this issue must be denied. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258; *Anderson*, 477 U.S. at 251-52.

## 2. Clearly Established

The only question left in the defendants' qualified immunity argument is whether the right the defendants allegedly violated is clearly established. To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. In determining whether the contours of a right are sufficiently clear, the court does not ask whether the right is established as a "broad proposition," but whether the right is established "in a particularized sense." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (stating that the question before the court was not whether the general right to be free from retaliation for one's speech was clearly established, but was instead a "more specific" right in the circumstances of the case); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his relevant conduct was unlawful in *the situation he confronted*." (emphasis added)). "But general statements of the law

are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'"  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (citations omitted) (noting also that the Supreme Court has rejected the requirement that previous cases involve "fundamentally similar" facts).

In its most recent case on qualified immunity, the Sixth Circuit reiterated that the dispositive question in determining whether a right was clearly established is whether a reasonable government official in the defendant's shoes would have fair warning sufficient to understand that what he was doing violated that right.  *Schulkers v. Kammer*, No. 19-5208, 2020 U.S. App. LEXIS 9867, at *18-19, 39 (6th Cir., Mar. 30, 2020) (citing, *inter alia*, *Anderson*, 483 U.S. at 640; *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019), and *Hope*, 536 U.S. at 741). The Sixth Circuit noted that this standard balances two important interests: (1) "'the need to hold public officials accountable when they exercise power irresponsibly;'" and (2) "'the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  *Id.* at *18 (quoting *Rafterty v. Trumbull Cty.*, 915 F.3d 1087, 1093 (6th Cir. 2019)). "The purpose of qualified immunity is to 'give[] government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but he plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015) (referring to the standard as "exacting").  "The plaintiff bears the burden of showing that an officer is not entitled to qualified immunity."  *Id.* at *19 (citing *Rafferty*, 915 F.3d at 1093).

Applying this standard, the *Schulkers* Court assessed claims that social workers: (1) violated the Fourth Amendment by performing an in-school, warrantless interview of a child in an abuse investigation; and (2) violated the Fourteenth Amendment right to due process by constraining the child's mother's ability to be alone with her children for two months without providing any procedural protection.  *Id.* at \*19-59.  The Court determined that the social workers were entitled to qualified immunity on the Fourth Amendment claim because, although the warrantless interviews *violated* the right against unreasonable searches and seizures, the Fourth Amendment's role in social workers conducting in-school interviews in child abuse investigations was unclear under existing case law.  *Id.* at \*20-21.  The social workers were not, however, entitled to qualified immunity on the Fourteenth Amendment claims because existing caselaw was sufficient to give them notice that the plaintiffs had protected liberty interests in custody and care of their children and in controlling decisions concerning the custody and care of their children without arbitrary government interference.  *Id.* at 39.  In reaching that conclusion, the court noted the lack of existing cases that were directly on-point, but held that requiring plaintiffs rely only upon cases that were directly on point would "place too high a burden on Plaintiffs at this stage of the proceedings."  *Id.* at 39-40.

As discussed above, the defendants point to the Ninth Circuit's decision in *Jessop* and the Sixth Circuit's decision in *Fox* to support their argument that the allegedly violated right was not clearly established.  *See* ECF Doc. 345 at 9-11; ECF Doc. 397 at 5-7.  In *Jessop*, the Ninth Circuit was confronted with whether officers were entitled to qualified immunity when they seized over $275,000 in cash and coins while executing a valid search warrant, but only inventoried $50,000 in seized currency.  936 F.3d at 939-41.  Without deciding whether the officers conduct violated the plaintiff's constitutional rights, the court indicated that the officers

27

"continued retention – and alleged theft – of the property might have been a Fourth Amendment seizure because "the Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Id.* at 941  The court also noted that the alleged theft was "deeply disturbing" and that the officers should have known it was morally wrong. *Id.* at 942.  Nevertheless, because no controlling cases or consensus of persuasive cases established that officers' subsequent theft of currency properly seized pursuant to a search warrant, the Ninth Circuit concluded that the violation would "not 'be clear to a reasonable officer.'" *Id.*  In reaching that conclusion, the Ninth Circuit noted that its decision in *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) (holding that officers who impounded a vehicle pursuant to a statutory warrant exception violated the owner's Fourth Amendment rights when they did not release the vehicle upon proof of ownership and a valid license because the exigency underlying the statutory exception had vanished), did not provide the officers notice that retention of the funds would violate the Fourth Amendment because: (1) *Brewster* did not involve a warrant permitting the seizure; and (2) *Brewster* was decided after the alleged theft in *Jessop*. 936 F.3d at 941-42.  Thus, the officers were qualifiedly immune from the plaintiff's Fourth Amendment claim. *Id.*

The Ninth Circuit also noted, in deciding *Jessop*, that the Fourth Circuit's decision in *Mom's, Inc. v. Willman*, 109 F. App'x 629 (4th Cir. 2004), was the only other case addressing officers theft of property initially seized pursuant to a valid search warrant. *Jessop*, 936 F.3d at 941.  In *Mom's, Inc.*, several federal agents had seized a plaintiff's watch while executing a search warrant but refused to return it at a later date. 109 F. App'x at 633.  Relying on *United States v. Place*, 462 U.S. 696, 706, 709-10 (1983) (initial seizure of a suitcase was valid but a 90-minute detention of the suitcase violated the owner's Fourth Amendment rights), the Fourth Circuit determined that because the agents' refusal to return the watch interfered with the

28

plaintiff's interest in it, "such theft violate[d] the Fourth Amendment." *Mom's, Inc.*, 109 F. App'x at 637. Nevertheless, the Fourth Circuit determined that it was not "clearly established" that the officers' theft during a valid search violated the watch-owner's Fourth Amendment rights. *Id.* ("If either Appellant stole [the watch-owner's] watch, he or she should have recognized that this was a tort, a crime, and even a sin, but he had no clear notice that this action violated the United States Constitution."). Thus, the Fourth Circuit determined that the agents were entitled to qualified immunity. *Id.*

In *Fox*, the Sixth Circuit addressed whether officers violated a plaintiff's Fourth Amendment rights when they refused to return the plaintiff's driver's license, which the officers found during an inventory search of the plaintiff's co-defendant's impounded truck. 176 F.3d at 345, 349-52. The Sixth Circuit determined that the officers' retention of the plaintiff's license did not fall within the meaning of "seizure," as defined in *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) ("'[S]eizure' of property . . . occurs when 'there is some meaningful interreference with an individual's possessory interests in that property.'"). In *Fox*, the Sixth Circuit reasoned that the seizure occurred when the officers initially took possession of the plaintiff's license, and "[t]he refusal to return the license here neither brought about an additional seizure nor changed the character of [the original seizure] form a reasonable one to an unreasonable one." *Id.* at 350. Further, the Sixth Circuit noted that "[t]he Supreme Court has only applied the 'meaningful interference with possessory interests' definition of seizure to cases where there is no debate that the challenged act is one of taking property away from an individual and the issue is whether that act of taking property away constitutes a meaningful interference with possessory interests." *Id.* at 351.

As Sultaana has argued, it makes little sense to apply the rationales of *Jessop*, *Mom's, Inc.*, and *Fox* to this case.  *See* ECF Doc. 366 at 1-16.  Unlike in this case, the officers in *Jessop*, *Mom's, Inc.*, and *Fox* could have reasonably believe that their conduct did not violate the respective plaintiffs' Fourth Amendment rights because the officers either: (1) had a search warrant expressly authorizing the officers to enter property, conduct a search, and seize the allegedly stolen property; or (2) properly seized the property pursuant to an exception to the warrant requirement.  *Jessop*, 936 F.3d at 939-42; *Mom's, Inc.*, 109 F. App'x at 633, 637; *Fox*, 176 F.3d at 345, 349-53.  But, as discussed above, the officers in this case neither had a warrant permitting their entry into Sultaana's home after effecting his arrest nor were they permitted to enter Sultaana's home under any of the narrow exceptions to the warrant requirement.  *See* Section V.B.1.c., *supra*.  And "[i]t has long been established than an officer may not enter a home absent a warrant or an exception to the warrant requirement." *See Barton v. Martin*, No. 18-1614, 2020 U.S. App. LEXIS 3763, at *17 (6th Cir., Feb. 7, 2020) (citing, *inter alia*, *Welsh*, 466 U.S. at 478, and *Payton*, 445 U.S. at 585-86).

In opposition to Detective Jerman's qualified immunity argument, Sultaana asserts that it was clearly established that his Fourth Amendment right against unreasonable seizures was violated when: (1) he was arrested on the porch outside his home "without incident;" and (2) after he was taken into custody Detective Jerman entered his home without a search warrant or authorization under an exception to the search warrant requirement.  ECF Doc. 365 at 4-5; ECF Doc. 366 at 2, 4-5.  Sultaana asserts that no reasonable officer could have believed that Detective Jerman had authority to enter his home to conduct a protective sweep inside the house because the arrest occurred outside the house and the officers' testimony establishes that they did not enter to conduct a protective sweep.  ECF Doc. 386 at 3-4.  Sultaana also asserts that no

30

reasonable officer could have believed entry into his home was authorized to protect Deputy
Sikora while he treated Sultaana inside the house, because Sultaana's medical emergency
occurred outside the house and did not authorize Deputy Sikora's entry.  ECF Doc. 386 at 4-5.

In support of his arguments, Sultaana relies primarily upon the Supreme Court's decision
in *Sodal v. Cook County, Ill.*, 506 U.S. 56 (1992) (holding that officers who assisted in the forced
removal of a mobile home from a trailer park, despite knowing that no eviction order had been
issued, violated the owner's Fourth Amendment right against unreasonable seizures), and the
Sixth Circuit's decision in *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994) (holding
that exigent circumstances did not excuse officers' warrantless entry into a suspect's house when
they made the entry over four hours after the man shot a civilian in his front yard, fled into the
house, and barricaded himself inside).  ECF Doc. 386 (*Sodal*); ECF Doc. 389 (*O'Brien*); ECF
Doc. 393 (*Sodal*).  But, much like the cases defendants cite, it makes little sense to apply *Sodal*
and *O'Brien* in this case.  Unlike the officer-defendants in *Sodal*, Detective Jerman was not
assisting in an eviction with express knowledge that there was no eviction order.  *See Sodal*, 506
U.S. at 57-58.  And, unlike the officer-defendants in *O'Brien*, Detective Jerman had not sat
outside Sultaana's house for over four hours (without incident during that period) before
deciding to enter Sultaana's home.  *See O'Brien*, 23 F.3d at 998.  And neither Sultaana nor
independent research has revealed a decision by the U.S. Supreme Court, the Sixth Circuit, or
any other circuit court addressing whether an officer is permitted to seize from an arrestee's
home currency reasonably suspected to be connected to an arrestee's promise to pay
co-defendants when the officer is present in the home on the (mistaken) belief that an
officer-EMT's decision to relocate the arrestee from the arrestee's porch into the arrestee's home
to better-provide medical treatment permitted the officer to enter to protect the officer-EMT.

31

As discussed in Section V.B.1., *supra*, from the comfort of a courtroom and with the infallible perception of 20/20 hindsight, it is sufficiently clear that Detective Jerman violated Sultaana's Fourth Amendment rights when he seized Sultaana's currency from Sultaana's house. Here, one might even argue that the general principles of Fourth Amendment jurisprudence made it obvious that an officer in Detective Jerman's position should have known that the medical exigency exception did not permit Deputy Sikora to move Sultaana from the porch into his house and that his own entry to protect Deputy Sikora was based on an officer-created exigency that did not excuse the warrant requirement.  *See Schulkers*, 2020 U.S. App. LEXIS 9867, at *39; *Mincey*, 437 U.S. at 392 (decided in 1978); *Atchley*, 474 F.3d at 850-51 (decided in 2007).  And, because Detective Jerman was not present in Sultaana's home pursuant to a warrant or warrant exception, the plain view exception also did not apply.  *Horton*, , 496 U.S. at 137; *McLevain*, 310 F.3d at 439.  One could also note that, at the time the alleged seizure occurred, the Supreme Court had recognized for at least forty years the general principle that a warrantless seizure is *per se* unreasonable unless an exception to the warrant requirement applies.  *See Coolidge*, 403 U.S. at 454-55 (decided in 1971).  Further, the contours of the plain view exception under *Horton*, the requirements of the medical exigency exception under *Mincey*, and *Atchley*'s limitation that an officer-created exigency did not permit warrantless entry were not new.  *See Horton*, 496 U.S. at 137 (decided in 1990); *Mincey*, 437 U.S. at 392 (decided in 1978); *Atchley*, 474 F.3d at 850-51 (decided in 2007).

But such reasoning would impermissibly transform the "reasonable officer" into the "reasonable constitutional law scholar."  *Cf. O'Brien*, 23 F.3d at 1000 (officers "are not held to the standards of a constitutional law scholar concerning the vagaries of the exigent circumstances exception to the warrant requirement").  In assessing whether Deputy Sikora's entry into

Sultaana's house permitted him to enter for Deputy Sikora's protection, a reasonable officer in Detective Jerman's position was not required to consider the nuanced question of whether Deputy Sikora's entry was permitted under *Mincey* or an improper officer-created exigency under *Atchley. Cf. Schulkers*, 2020 U.S. App. LEXIS 9867, at *19 ("When determining whether defendants are entitled to qualified immunity, 'we do not lump together each of the relevant government actors. Rather, we assess each actor's liability on an individual basis.' *Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020)."). Instead, Detective Jerman was free to make reasonable (though mistaken in hindsight) judgments in performing his duties without distraction by the platitudes of multiple layers of constitutional questions. *See Shulkers*, 2020 U.S. App. LEXIS 9867, at *18-19 (citing *Sheehan*, 575 U.S. at 600, and *Rafferty*, 915 F.3d at 1093).

Moreover, this court cannot conclude that *no* reasonable officer – knowing that Sultaana was not the only resident of the house, that Sultaana had been spending time while out on bond with his co-defendants in violation of his conditions of release, and that his fellow officer entered Sultaana's house to provide medical treatment to Sultaana (whether lawfully or unlawfully) – would understand that he was not permitted to enter the house to protect his fellow officer. ECF Doc. 1-1 at 3-7; ECF Doc. 199-5 at 2; ECF Doc. 280-1 at 27; ECF Doc. 345-1 at 5-7; ECF Doc. 345-2 at 1; ECF Doc. 345-3 at 1; ECF Doc. 345-4 at 1; ECF Doc. 345-5 at 7. At most, the facts in the record construed in Sultaana's favor establish that there is a genuine issue of material fact as to what a reasonable officer might conclude he was permitted to do in the particular circumstances Detective Jerman found himself in after Deputy Sikora relocated Sultaana into his house. *Cf., e.g., Cohn v. DeWeese*, No. 09-12187, 2010 U.S. Dist. LEXIS 104465, at *39-69 (E.D. Mich., Sept. 30, 2010) (an officer, who followed his fellow team members into, searched, and seized papers from an apartment in attempting to execute a search warrant for another

apartment was entitled to qualified immunity because he relied on directions from another officer, even though there was a jury question as to whether the other officer knew facts that would have alerted him to the mistake).

Therefore, Sultaana has not carried his burden to show that the lawfulness of Detective Jerman's actions was beyond reasonable debate. *Schulkers*, 2020 U.S. App. LEXIS 9867, at *39 (*citing City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.").

If the Court accepts the dispositions of the parties respective motions recommended in this R&R, then I further recommend that the Court find that Sultaana has not met his burden to show that Detective Jerman is not entitled to qualified immunity because he has not shown that it was clearly established that Detective Jerman's alleged seizure violated Sultaana's clearly established rights under the Fourth Amendment. *Schulkers*, 2020 U.S. App. LEXIS 9867, at *19; *Rafferty*, 915 F.3d at 1093.  Accordingly, I recommend that the Court GRANT the defendants' motion for summary judgment with regard to the argument that Detective Jerman is entitled to qualified immunity.

## VI.    Vexatious Litigator Status

On February 19, 2020, the court ordered Sultaana to show cause why he should not be declared a vexatious litigator based on the numerous conflicting, duplicative, and arguably frivolous motions he has filed in this case.  ECF Doc. 388 at 11, 13.  Sultaana filed a response to the show-cause order on March 4, 2020.  ECF Doc. 402.  In his response, Sultaana asserts that he should not be declared a vexatious litigator because: (1) his "request to have all [of his] pending motions answered" (ECF Doc. 302), motions seeking a declaration that Detective Jerman's and

34

Deputy Williamson's declarations were perjured (ECF Doc. 359; ECF Doc. 369; ECF Doc. 370; *see also* ECF Doc. 377; ECF Doc. 383), and motions challenging his library access and mail service from Lebanon Correctional Institution (ECF Doc. 272; ECF Doc. 321; ECF Doc. 340; ECF Doc. 343; ECF Doc. 344) were not frivolous; (2) this case has proceeded abnormally and he changed counsel numerous times; (3) he has not sought to delay proceedings; and (4) the court previously denied the defendants' motion to declare him a vexatious litigator.  ECF Doc. 402 at 1-9, 12.

While courts are very tolerant of legal filings submitted by *pro se* litigants, such tolerance is not limitless.  Federal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs the ability to carry out Article III functions. *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986).  Moreover, this Court has the responsibility to prevent litigants from unnecessarily encroaching on judicial machinery needed by other litigants before the court.  *Id.*  To achieve these ends, the Sixth Circuit has approved enjoining vexatious and harassing litigants by requiring them to obtain leave of court before submitting additional filings.  *See*, *e.g.*, *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir. 1987).

The reasons Sultaana has provided for why he should not be declared a vexatious litigator are insufficient to show cause for why he has filed numerous[7] conflicting and duplicative motions – many of which are arguably frivolous or unrelated to the merits of his claim before this court.  Instead, the record indicates that Sultaana's numerous filings have been calculated toward abusing the judicial process or, at the very least, have had the effect of encroaching on the judicial machinery needed by other litigants before the court.  Moreover, Sultaana has been

---

[7] Of the 332 total filings by parties in this case, Sultaana has filed 278 (83.7%) of them.  And, even after the court issued the November 27, 2019, order denying the defendants' motion to declare Sultaana a vexatious litigator (ECF Doc. 295), Sultaana has filed 89 (90.8%) of the 98 filings by parties.

on notice that such filing behavior could result in a finding that he is a vexatious litigator and an order enjoining him from making filings other than those expressly permitted by the court.  *See* ECF Doc. 201; ECF Doc. 295; *see also* CM/ECF for N.D. Ohio Case No. 1:15-cv-1963, Doc. 44 (declaring Sultaana vexatious on February 17, 2016); CM/ECF for N.D. Ohio Case No. 1:16-cv-2884, Doc. 196 (declaring Sultaana vexatious on April 26, 2018).

Accordingly, I recommend that the Court declare Sultaana a vexatious litigator and enjoin him from making additional filings, without first obtaining leave or express permission from this court.

**VII.    Summary and Recommendations**

To summarize, I recommend that the Court DENY Sultaana's motion for summary judgment (ECF Doc. 199).  I further recommend that the Court GRANT the defendants' motion for summary judgment (ECF Doc. 345) because: (1) Sultaana has not produced sufficient evidence to create a genuine issue of material fact as to whether Deputy Williamson took Sultaana's currency; and (2) Detective Jerman is entitled to qualified immunity because it was not clearly established that the alleged seizure in this case violated Sultaana's Fourth Amendment right against unreasonable seizures.

Finally, I recommend that the Court declare Sultaana a vexatious litigator and enjoin him from making additional filings, without first obtaining leave or express permission from this court.  Sultaana should be permitted to file: (1) a single brief objecting to this Report and Recommendation and a single reply to any brief opposing his objection(s); (2) a single response brief for each objection or motion defendants might file; and (3) any other filing that might be permitted by a later order.

Dated: April 2, 2020

Thomas M. Parker
United States Magistrate Judge

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).