IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAKEEM SULTAANA, | ) | CASE NO. 1:15 CV 382 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| JOHN JERMAN, *et al.*, | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Report & Recommendation of Magistrate Judge

Thomas M. Parker (ECF #409) which recommends that the Defendant's Motion for Summary

Judgment (ECF #345) be granted and that Plaintiff's Motion for Summary Judgment (ECF #199)

be denied. Magistrate Judge Parker also recommends that Plaintiff be declared a vexatious

litigator and be enjoined from making additional filings without first obtaining leave of the Court.

Plaintiff has filed an objection to the Report and Recommendation.[1] The Court has reviewed *de*

*novo* those portions of the Magistrate Judge's Report and Recommendation to which objection

has been made. *See* FED. R. CIV. P. 72(b). For the reasons that follow, the Report and

Recommendation of Magistrate Judge Parker will be adopted with modification; Plaintiff's

Motion for Summary Judgment will be denied; Defendants' Motion for Summary Judgment will

be granted; and Plaintiff will be declared a vexatious litigator.

---

[1] In consideration of the Plaintiff's *pro se* status, the Court has considered Plaintiff's
Objections in their entirety despite the fact that the 43 page document clearly exceeds the
20 page limit established by the Federal Rules and was filed 3 days after the filing
deadline for Plaintiff's objection, which was extended at Plaintiff's requests three times
to July 11, 2020.

**A. Factual and Procedural Background**

As Magistrate Judge Parker notes, the Sixth Circuit reversed and remanded this Court's

dismissal of Plaintiff's complaint pursuant to Fed. R. 12(b)(6) in part finding that Plaintiff alleged

sufficient facts to state a claim that Defendants Detective Jerman and Deputy Williamson violated

Plaintiff's Fourth Amendment rights by illegally seizing his currency. The Sixth Circuit affirmed

the dismissal of all other claims and defendants. (ECF #23)[2]

Magistrate Judge Parker exhaustively reviewed the record and distilled the undisputed or

established facts by the Rule 56 evidence. Those facts will be summarized here but not recounted

in detail.[3] Plaintiff's claim arises from the events surrounding his arrest on March 6, 2014. On

that date Detective Jerman obtained an arrest warrant from the state trial court on the grounds that

---

[2]

Magistrate Judge Parker determined that the issue of whether Defendants unlawfully entered and searched his home is not currently before the Court based upon the Sixth Circuit's remand order ("[T]he district court's judgment is VACATED to the extent it dismissed Sultaana's claim challenging Jerman and Williamson's seizure of United States Currency from his home. The district court's dismissal of Sultaana's remaining claims is AFFIRMED.") *See Cont'l Cas. Co. v. Indian Head Indus.*, 941 F.3d 828, 834 (6th Cir. 2019)("The court cannot go beyond the scope of remand.") Plaintiff objects that the Magistrate Judge's limitation of the issues before this Court is at odds with the Sixth Circuit's ruling. While the Magistrate Judge correctly quotes the Sixth Circuit opinion, the opinion also notes that "the fact that Plaintiff's arrest was effectuated pursuant to a valid arrest warrant did not necessarily render the subsequent search lawful." (ECF #23 at p. 5) Nevertheless, the Magistrate Judge's opinion does address Plaintiff's contention that the alleged search and seizure was improper and concludes that the Defendants are entitled to qualified immunity on that claim. All of Plaintiff's claims have thus been addressed.

[3]

One of Plaintiff's objections to the Report and Recommendation was that the Magistrate Judge failed to adopt all of Plaintiff's allegations of fact. That objection is overruled because the Magistrate Judge carefully sifted through all of the evidence and properly set forth those facts that were unchallenged or were supported by evidence as well as material facts that were challenged.

-2-

Plaintiff had violated the terms of his bond by contacting his co-defendants. The warrant ordered the arrest of Plaintiff and listed his last known address. Detective Jerman, Deputy Williamson, with the assistance of Sergeant Sharpe, Detectives Massey and Uthe, Deputy Sikora and K-9 Deputy Riegelmayer (the "CCSO Warrant Unit") went to Plaintiff's address listed in the Warrant. After the officers knocked on Plaintiff's door, he did not answer for approximately 5-10 minutes. Plaintiff opened the door after the officers threatened to forcibly enter the house. Plaintiff was put into handcuffs on the front porch and shortly thereafter said he was having a diabetic attack. One of the officers in the unit, Deputy Sikora, was also an EMT.  The officers returned Plaintiff into the house so that Deputy Sikora could provide better emergency assistance to Plaintiff and because it was cold and poorly lit outside. The officers called for EMS to come to the scene. The officers did not do a protective sweep of the house or a search but saw that there was currency (about $8,900) on the table in the living room which was immediately inside Plaintiff's front door.

Plaintiff states that he saw Detective Jerman take the currency. Detective Jerman, Deputy Williamson, Detective Massey and Deputy Sikora attested that they did not take any money from Plaintiff's house and did not see any other officer take money from the house. In his report, Detective Massey noted that the money was not inventoried because Plaintiff's mother, Amirah, had arrived on scene. Amirah, who arrived at the house before EMS arrived, was not allowed to enter the house or ride in the ambulance with Plaintiff. Detectives Jerman and Massey accompanied Plaintiff in the ambulance and transported him to the Cuyahoga County Jail after he was treated and released from the hospital.

-3-

## B. Magistrate Judge Parker's Findings

### 1. Taking of the Currency

After resolving Plaintiff's two evidentiary challenges,[4] Magistrate Judge Parker examined the evidence surrounding Plaintiff's claim that Defendants had taken his currency. Plaintiff asserts that the evidence shows that Detective Jerman and Deputy Williamson took the currency and that he is entitled to summary judgment on that issue. Defendants assert that they are entitled to summary judgment in their favor on this issue based upon the testimony of the officers and the contradictory and self-serving nature of Plaintiff's testimony. The Magistrate Judge determined that Plaintiff provided no evidence that Deputy Williamson took the money and the only evidence supporting Plaintiff's claim that Detective Jerman took the money is Plaintiff's testimony. All of the officers testified that they did not take the money and that they did not see any other officer take the money. Accordingly, Magistrate Judge Parker found that Plaintiff's motion for summary judgment on this issue should be denied as there was a dispute of a genuine issue of material fact. The Magistrate Judge recommended that Defendants' motion for summary judgment on this issue should be granted as to Deputy Williamson because there was no evidence submitted by Plaintiff

---

[4] Plaintiff challenged the use of unauthenticated transcripts of phone conversations between Amirah Sultaana and Detective Schilling. (ECF #349) Magistrate Judge Parker determined that this challenge was moot because reference to the transcripts was not necessary for resolution of the summary judgment motions. Plaintiff's challenge to Defendants' use of Plaintiff's unsigned deposition transcript (ECF #384) was overruled because the fact that Plaintiff did not sign his deposition does not render it inadmissable as support for a Rule 56 motion because the deposition was taken under oath, made on Plaintiff's personal knowledge and shows that Plaintiff was competent to testify. Plaintiff moved again to suppress his unsigned deposition transcripts three months after the R&R at issue was filed but before he filed his objections to the R&R. See (ECF 416) For the same reasons articulated by Magistrate Judge Parker in the R&R, Plaintiff's duplicative motion to suppress his unsigned deposition transcripts (ECF #416) is once again denied.

to show that Deputy Williamson took the money, while the motion should be denied as to

Detective Jerman based on Plaintiff's statement that he saw Detective Jerman take the money.

Further, Magistrate Judge Parker found that Plaintiff's failure to produce any evidence that

Deputy Williamson took his money undermined his sole claim against Deputy Williamson, thus

he recommends that Deputy Williamson be dismissed as a party. The Court agrees with the

Magistrate Judge's findings and recommendations to this point.

**2. Fourth Amendment Seizure and Qualified Immunity**

Detective Jerman[5] argues that even if, for the sake of argument, we assume that he took

Plaintiff's money, he nevertheless is entitled to summary judgment on the basis of qualified

immunity because: (1) they were lawfully permitted to seize Plaintiff's money under the plain

view exception to the warrant requirement; and (2) it was not clearly established that their

conduct violated Plaintiff's Fourth Amendment rights.

After a lengthy discussion where Magistrate Judge Parker finds that a constitutional

scholar could properly conclude that Detective Jerman's actions violated Plaintiff's Fourth

Amendment rights, Magistrate Judge Parker eventually comes to the conclusion that Detective

Jerman actions in entering the house with Deputy Sikora, following Plaintiff's medical

emergency were "reasonable" for an officer in Detective Jerman's position, and that Plaintiff did

not meet his burden to show that it was clearly established that Detective Jerman's alleged seizure

---

[5]

Both Defendants have moved for summary judgment on the basis of qualified immunity.
The Magistrate Judge addresses that argument with respect to Detective Jerman because
he had already determined that Deputy Williamson should be dismissed.  Even if that
finding were in error, the qualified immunity analysis applies equally to Deputy
Williamson.

-5-

of Plaintiff's currency violated Plaintiff's clearly established rights under the Fourth Amendment. Accordingly, Magistrate Judge Parker recommends that Defendants' Motion for Summary Judgment be granted because Detective Jerman is entitled to qualified immunity. While the Court agrees with Magistrate Judge Parker's conclusion that Detective Jerman is entitled to qualified immunity, the Court disagrees that Detective Jerman's actions here violated Plaintiff's Fourth Amendment rights, even if only from the point of view of a constitutional scholar.

## C. Qualified Immunity

Government officials are protected from liability for civil damages, including those that arise under §1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, at 231 (2009) "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal citations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Qualified immunity under federal law is applied using a two-part test. *Id.* Courts may consider these two parts in any order. *Pearson*, 555 U.S. at 236. First, courts must determine whether the alleged acts violate a constitutional right. Second, the court must determine whether the constitutional right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012); see also, *Saucier v. Katz*, 533 U.S. 194 (2001). The determination must be based on what a reasonable officer would believe or understand under the circumstances given what was known to the officer. *Fox v. DiSoto*, 489

F.3d 227 at 236 (6ᵗʰ Cir. 2007).  The standard is objective, and must not be applied using hindsight unavailable to the officers at the time the actions were taken. *Id.*  Further, when determining whether a right was clearly established at the time of the incident, that right must be defined with specificity. *City of Escondido v. Emmons*, 139 S. Ct. 500  (Jan. 7, 2019).  Also, when making this determination, a court must take into account "that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id.*  at *503 (citing *Kisela v. Hughes*, 584 U.S. at —, 138 S.Ct. at 1152 (2018)).  In order to take a case outside the protection of qualified immunity, a plaintiff needs to "identify a case where an officer acting under similar circumstances" was held to have violated the plaintiff's constitutional rights. *Id.* at 504 (citing *District of Columbia v. Wesby*, 583 U.S. —, 138 S. Ct. 577, 199 L. Ed. 2d 453, at 468 (2018)).

**1. Constitutional Violations**

While the two elements of qualified immunity may be addressed in any order, the Court will first determine whether Detective Jerman's actions constituted a constitutional violation.

1.  Entry into the house after Plaintiff's arrest was effectuated.

In this case, the evidence shows that Plaintiff was arrested and placed in handcuffs outside his home on the front porch. At that point the arrest pursuant to the arrest warrant was complete and the arrest warrant would not support a further entrance into the home. *United States v. Damrah*, 322 F.Supp.2d 892, 898 (N.D. Ohio June 7, 2004).  Under the Fourth Amendment, searches and seizures inside a home without a warrant are presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain

exceptions." *Id.* (Citations omitted.) "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393–394 (1978). The Supreme Court has found that "one exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Brigham City*, 547 U.S. at 403 (quoting *Mincey*, 437 U.S. at 392,(quoting *Wayne v. United States*, 318 F.2d 205, 212 (C.A.D.C.1963) (Burger, J.))

In the case at bar, the Plaintiff told the arresting officers that he was having a diabetic crisis. Deputy Sikora, an EMT, immediately offered assistance to Plaintiff, moving him into the house where there was better light and warmth. Other officers called for EMS, some stayed outside and some of the officers, including Detective Jerman, entered the house with Plaintiff and Deputy Sikora in order to protect Deputy Sikora. The officers were aware that Plaintiff did not live alone and knew there was a reasonable probability that more people could be inside the house. The officers took Plaintiff inside his front door which opened into his living room. The officers did not search the house or otherwise move beyond the immediate area. The officers actions in moving Plaintiff inside his house, where it was warm and well lit, to help treat him in his medical crisis is objectively reasonable. They did not create the medical exigency–Plaintiff raised the issue. Moreover, the entry, justified here by Plaintiff's medical emergency, was "strictly circumscribed by the exigenc[y] which justif[ied] its initiation." *Mincey*, 437 U.S. at 393 quoting *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968). Accordingly, the entry here did not violate the Fourth

Amendment.

2. Seizure of the Currency under the Plain View Exception

Detective Jerman argues that he was lawfully permitted to seize the currency from Plaintiff's house under the plain view exception to the warrant requirement. Courts have recognized the plain-view doctrine as an exception to the warrant requirement. *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (*citing Horton v. California*, 496 U.S. 128, 134 (1990)). When an item is in plain view, "neither its observation nor its seizure would involve any invasion of privacy," and therefore the plain view exception to the warrant requirement implicates the protection from unreasonable seizures, rather than unreasonable searches. *Horton*, 496 U.S. at 133–34 (citations omitted). The plain view exception permits warrantless seizures when four conditions are satisfied: (1) the object is in plain view; (2) the officer is legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature is immediately apparent; and (4) the officer has a lawful right of access to the object. *United States v. McLevain*, 310 F.3d 434, 438–39 (6th Cir.2002).

The seizure of the currency at issue in this case would fall under the plain view exception because each of the four conditions of the plain view exception is present. It is undisputed that the currency was in the officers' plain view after they entered the living room–the officers and Mr. Sultaana testified that they could see the cash sitting on the table. As discussed above, the officers were legally present in the living room when they brought Plaintiff in to offer medical assistance. The incriminating nature of Plaintiff's currency was immediately apparent to the officers in that "they had probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980). At the time of his arrest, Plaintiff was under indictment for theft and

fraud offenses involving tens of thousands of dollars. Further, the evidence shows that the officers had reason to believe that Plaintiff was trying to pay co-defendants or other people related to the underlying criminal case. *See United States v. Chandler*, 437 F.App'x 420, 428 (6th Cir. 2011)(collecting cases holding that the incriminating nature of large sums of cash is "immediately apparent" based on the circumstances of the underlying crimes.) Finally, the officers had a lawful right to seize the currency because they were lawfully present in the living room when they observed the currency. *See U.S. v. Carmack*, 426 Fed. Appx. 378, 383 (6th Cir. 2011)(the fourth condition of the plain view exception tests whether the officers had lawful access to the contraband or whether the officers had to commit a trespass in order to seize the contraband.)

Based upon the undisputed evidence in this case, neither Detective Jerman's entry into Plaintiff's house pursuant to Plaintiff's medical emergency or his alleged seizure of the currency under the plain view exception constituted a constitutional violation.[6]

## 2. Clearly Established

The second element of the qualified immunity analysis is whether the constitutional right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012); see also, *Saucier v. Katz*, 533 U.S. 194 (2001). A defendant violates an individual's clearly established rights "only when 'the state of the law' at the time of an incident provided 'fair warning' to the defendant that his or her conduct was unconstitutional."

---

[6]

Moreover, Defendants assert that any theft of the currency pursuant to or subsequent to a lawful seizure, while morally wrong, does not clearly violate the Fourth Amendment. *Jessop v. City of Fresno*, 936 F.3d 937 (9th Cir. 2019) cert. denied 2020 WL 2515813 (May 18, 2020) This argument will be addressed in the next section.

*Tolan v. Cotton*, 572 U.S. 650, 656 (2014)(citations omitted). Detective Jerman, citing *Jessop v. City of Fresno and Fox v. Van Oosterum*, argues that even if he took Plaintiff's currency on March 6, 2014, he did not have clear notice that any such taking would violate the Fourth Amendment.

In *Jessop*, the defendant officers executed a search warrant which authorized the seizure of all monies, negotiable instruments, or things of value. Following the search the officers gave the appellants an inventory sheet stating they seized approximately $50,000 from the properties. Appellants alleged that the officers actually seized $151,380 in cash and $125,000 in rare coins, and stole the difference between the amount on the inventory sheet and the amount actually seized. The Ninth Circuit stated that it had never addressed whether the theft of property covered by the terms of a search warrant, and seized pursuant to a warrant, violates the Fourth Amendment. Without resolving that question, the Court determined that the "lack of any cases of controlling authority" or a "consensus of cases of persuasive authority" on the constitutional question compels the conclusion that the law was not clearly established at the time of the incident." *Id.* at 942. "Although the City Officers ought to have recognized that the alleged theft of Appellants' money and rare coins was morally wrong, they did not have clear notice that it violated the Fourth Amendment– which as noted, is a different question." *Id.* The Ninth Circuit also instructed that this in not "one of those rare cases in which the constitutional right at issue is defined by a standard that is so 'obvious' that we must conclude ... that qualified immunity is inapplicable, even without a case directly on point." *Id.* (quoting *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013))

Because the money in this case was not seized pursuant to a search warrant but pursuant

-11-

to an exception to the warrant requirement, *Jessop* is not directly on point. However, in *Jessop* the Ninth Circuit referenced one of its 2017 cases, *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), where police officers impounded the plaintiff's car (seized it through an exception to the warrant requirement) and did not return it after plaintiff appeared with proof of ownership and a valid drivers license. In *Brewster* the Ninth Circuit determined that the Fourth Amendment was implicated stating: "'[t]he exigency that justified the seizure [of the plaintiff's vehicle] vanished once the vehicle arrived in impound and [the plaintiff] showed up with proof of ownership and a valid driver's license,' [and] held that the government's impoundment of the vehicle "constituted a seizure that required compliance with the Fourth Amendment." *Jessop*, 936 F.3d at 941 (quoting *Brewster*, 859 F.3d at 1196-97)[7]

In a concurring opinion in *Jessop*, Judge Smith writes: "Even if [*Brewster*] were decided before the City Officers' alleged theft, it is not clear that the officers violated the Fourth Amendment." Judge Smith noted that *Brewster's* reasoning appears to conflict with the Supreme Court's jurisprudence on Fourth Amendment seizures which has defined a seizure as "a single act and not a continuous fact." *Id.* at 943 (quoting *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 471, 21 L.Ed. 897 (1873) (further citations omitted.)) Judge Smith noted that *Brewster's* reasoning that the Fourth Amendment continues to apply after the government's initial seizure of property "conflicts with several other circuits which have concluded that the Fourth Amendment provides protection only against the initial taking of property, not its continued retention." *Id.* Judge Smith cites the following cases as being in conflict with *Brewster*: *Lee v. City of Chicago*, 330 F.3d 456, 460–66 (7th Cir. 2003); *Fox v. Van Oosterum*, 176 F.3d 342, 349–51 (6th Cir.

―――――――――――――――――

[7]Brewster was decided in 2017, well after the 2014 seizure (or theft) in this case.

1999); see also *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) (government's continued retention of seized property did not violate the Fourth Amendment because the officer "had probable cause to seize [the plaintiff's] property"); *United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992) (government's continued retention of seized property implicates "a statutory right under New York law," not the Fourth Amendment).

Thus, Judge Smith opines that the City Officer's subsequent theft of money and coins following their lawful seizure of the property pursuant to the search warrant did not violate the Fourth Amendment. "Because the City Officers' initial seizure of Appellants' property was lawful, and because a Fourth Amendment seizure is complete after the government has taken possession of the property, Appellants would not be able to state a Fourth Amendment claim against the City Officers for their theft of the property *after* its lawful seizure." *Id*. at 943-944 (emphasis in original)

In *Fox v. Van Oosterum*, one of the cases cited by Judge Smith, the plaintiff was arrested and his truck was impounded. During the inventory search of the truck, plaintiff's wallet and driver's license were found and collected. Approximately five months after his license was seized in the inventory search, the plaintiff asked the Sheriff's office to return it and was refused. The Sixth Circuit determined that the seizure occurred in an unchallenged inventory search and ended well before the defendants refused to return plaintiff's license. "[T]he Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property." 176 F.3d at 351. "Once that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Id.* While Plaintiff here has challenged the lawfulness of the seizure of currency, the Court has determined

-13-

that the seizure (if it happened) comports with the plain view exception to the warrant requirement and did not violate the Fourth Amendment. Under *Fox*, the subsequent failure to return the currency (the alleged theft of the currency) is not a seizure that implicates the Fourth Amendment. Even if *Fox* is not directly applicable here as the Magistrate Judge posits, Plaintiff offers no other cases in the Sixth Circuit, or elsewhere, that hold that the theft of funds subsequent to a lawful seizure violates the Fourth Amendment.  As such, the "lack of any cases of controlling authority" or a "consensus of cases of persuasive authority" on the constitutional question compels the conclusion that the law was not clearly established at the time of the incident." *Jessop,* 936 F.3d  at 942.  Having found that Defendants' actions in this matter did not violate the Fourth Amendment, and further, that the constitutional right at issue here was not clearly established at the time of the incident in March 2014, Defendants are entitled to qualified immunity. Accordingly, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted.

**D. Vexatious Litigator Status**

Magistrate Judge Parker reviewed the record in this action and the filings in response to the Court's Order to Show Cause why Plaintiff should not be declared a vexatious litigator based on the numerous conflicting, duplicative, and arguably frivolous motions he has filed in this case. See ECF #388. Magistrate Judge Parker concluded that the reasons Plaintiff provided for why he should not be declared a vexatious litigator are insufficient. Many of Plaintiffs numerous filings are frivolous or unrelated to the merits of his claim before the Court. Despite being on notice that his filing behavior could result in a finding that he is a vexatious litigator, Plaintiff continued to file arguably frivolous motions. Indeed, Plaintiff has filed two duplicative and out of rule

-14-

evidentiary motions following the issuance of the Magistrate Judge's Report and

Recommendation currently before the Court. (ECF #416 and #418)[8] The Court agrees with

Magistrate Judge Parker's analysis of this issue and adopts his recommendation that Plaintiff be

declared a vexatious litigator and be enjoined from making additional filings without first

obtaining leave or express permission from the Court.

### Conclusion

For the reasons set forth above, Magistrate Judge Parker's Report and Recommendation

is adopted as modified above. Plaintiff's objections to the Report and Recommendation are

duplicative of the arguments made to the Magistrate Judge or are unwarranted.  Plaintiff's Motion

for Summary Judgment (ECF #199) is denied. Defendants' Motion for Summary Judgment (ECF

#345) is granted. Plaintiff is declared a vexatious litigator and is enjoined from making additional

filings without first obtaining leave of court. This action is terminated.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: July 23, 2020

---

[8]Both of those out of rule motions (ECF #416 and #418) are hereby denied.

-15-